CLERK'S OFFICE U.S. DIST COURT
AT ROANOKE, VA
FILED

AUG 15 2006

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

EUGENE B. ANGLE, )
    Plaintiff, )
)
                                                  ) Civil Action No. 7:05cv00520
v. )
)
JO ANNE B. BARNHART, ) By: Hon. Michael F. Urbanski
COMMISSIONER OF SOCIAL SECURITY, ) United States Magistrate Judge
    Defendant. )
)

## MEMORANDUM OPINION

Plaintiff Eugene B. Angle ("Angle") brought this action for review of the Commissioner of Social Security's decision denying his claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383. The parties have consented to the undersigned's jurisdiction, and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision.

The court finds that the Administrative Law Judge ("ALJ") failed to properly develop the record, analyze all of the evidence, and explain the weight given to obviously probative exhibits. Specifically, the ALJ neglected to address evidence inconsistent with his decision, which establishes plaintiff is unable to sit, stand, or walk for more than one hour during the work day, needs a cane to ambulate, and needs the ability to elevate his leg as necessary. Additionally, the ALJ failed to consider evidence that suggests Angle's back condition is serious enough to warrant further diagnostic examination, which plaintiff is unable to afford. As the ALJ failed to address this evidence in his decision, the court is unable to determine if the ALJ's decision is

supported by substantial evidence. Thus, the undersigned remands this case to the Commissioner for further development of the record.

## I.

Plaintiff was born on May 15, 1953, and completed high school. (Administrative Record, hereinafter "R." at 20, 30, 76, 245) Plaintiff previously worked as a heavy truck operator and construction laborer. (R. 20, 87, 247-48) Plaintiff filed applications for DIB and SSI with a protective filing date of September 11, 2003, alleging he became disabled on September 3, 2003 due to a severe break to his left ankle and left leg, and the subsequent development of a back disorder. (R. 20-24, 87) Plaintiff's claims were denied at both the initial and reconsideration levels of administrative review, (R. 19), and an administrative hearing was held before an ALJ on February 15, 2005. (R. 241-87) In a decision dated March 16, 2005, the ALJ denied plaintiff's claims for DIB and SSI. The ALJ found that plaintiff's back condition was not severe, and although plaintiff's fractured left ankle and leg, as well as his right foot fasciitis/spur, constituted severe impairments, these conditions did not meet or medically equal a listed impairment. The ALJ also found Angle's complaints of physical pain to be incredible, that he retained the residual functional capacity ("RFC") to perform some light work, and that a sufficient number of jobs exist for a person with his physical limitations. (R. 29-30)

The ALJ's decision became final for purposes of judicial review under 42 U.S.C. § 405(g) on June 24, 2005, when the Appeals Council denied plaintiff's request for review. (R. 7-9) Plaintiff then filed this action challenging the Commissioner's decision denying his claim for benefits.

## II.

Angle argues that the ALJ erred in his findings that plaintiff's back pain is not severe, and that plaintiff's ankle and back impairments neither meet nor medically equal any listing. Additionally, Angle claims that the ALJ erred in his RFC determination, as he failed to properly consider the combined effects of plaintiff's impairments and, without sufficient explanation, disregarded the opinions of his treating physicians and the medical expert ("ME"). Finally, Angle alleges that the ALJ erred in finding that there are a sufficient number of jobs in the national economy that accommodate his limitations.

Judicial review of disability cases is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that the plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. See Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). In making this substantial evidence determination, the court must consider whether the ALJ analyzed all of the relevant evidence and sufficiently explained his findings and his rationale for crediting or discrediting certain evidence. See Sterling v. Smokeless Coal Co. v. Akers, 131 F.3d 438, 439-40 (4th Cir. 1997).

Therefore, the question presented is whether there is substantial evidence to support the ALJ's assessment of Angle's back and ankle conditions and his resultant physical limitations. As the ALJ's decision does not adequately address certain aspects of the medical record or the

3

ME's testimony, nor did the ALJ seek further medical evaluation to develop the record, this case must be remanded for further administrative consideration.

### III.

First, Angle argues that the ALJ erred in determining that his back disorder, individually and in combination with his alleged cardiac condition and pulmonary disease, had minimal effect on his functional capabilities and, thus, is not a severe impairment. (R. 24) The claimant has the burden of proving that he is disabled by showing he has a medically determinable physical or mental impairment that renders him unable to engage in substantial gainful employment. Gross v. Heckler, 785 F.2d 1163, 1165 (4th Cir. 1986); see 20 C.F.R. §§ 404.1512(c), 416.912(c). An impairment can be considered "not severe" only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984).

The ALJ found that Angle's back condition was not severe based on the ME's testimony that no objective evidence of record suggests any neurological consequences result from plaintiff's alleged back disorder. (R. 24, 266) This assessment fails to paint a complete picture of Angle's back impairment. One month before the administrative hearing, in January, 2005, an x-ray and a MRI of Angle's lumbar spine revealed moderate posterior central and left L4-5 disc protrusion, creating nerve root compression in the left lateral recess and mild, symmetric lateral recess and neural foraminal stenosis in the L3-4 due to annular disc bulge. (R. 228-29) Although the ME had this MRI report, he discounted it:

> Q. What impact, doctor, do you find from the herniated disc pressing a nerve root?

4

> A. All right, that can produce pain but this pain could be regionally come, the pain in his back could be coming from that, however, the presence of a compression on an MRI does not meet 1.04A. There must be neurological consequences of that and I did not see any neurological consequences of this mentioned anywhere in the record. There was no specific clinical evaluation of his back.

(R. 266). While Angle was referred by his primary physician, Dr. Claterbaugh, to a neurologist for further evaluation, he did not follow through as he could not afford it. (R. 229, 230-233, 266) Neither the ME nor the ALJ considered the fact that Dr. Claterbaugh continued to treat Angle for severe lower back pain following the MRI. (R. 230-32)

"[T]he ALJ has a duty to explore all relevant facts and inquire into the issues necessary for adequate development of the record, and cannot rely only on the evidence submitted by the claimant when that evidence is inadequate." Cook v. Heckler, 783 F.2d 1168, 1173 (4th Cir. 1986). Moreover, a claimant should not be penalized for failing to seek treatment or testing which he cannot afford. Lovejoy v. Heckler, 790 F.2d 1114, 1117 (4th Cir. 1986). It is as "erroneous to consider the claimant's failure to seek treatment as a factor in the determination that [his] impairment is not severe as it would be to reach the ultimate conclusion that the claimant is not disabled" because he failed to seek treatment or further evaluation when that failure is reasonably justified by a lack of funds. Id. (citing Preston v. Heckler, 769 F.2d 988 (4th Cir. 1985)). Accordingly, if the record contains insufficient evidence to determine whether the claimant is disabled, the ALJ should order additional consultative examinations, to be paid for by the Social Security Administration. See 20 C.F.R. § 404.1517.

Without examining the plaintiff, the ME noted that the pain in plaintiff's back could be coming from the herniated disc pressing on a nerve root. (R. 266) Yet he found nothing in the

5

record to suggest any neurological consequences as a result of the nerve compression evident on the MRI. (R. 266) However, the record clearly indicates that Angle had an objective cause for back pain, that further evaluation was needed to fully diagnose and treat his condition, and that plaintiff lacked funds to do so. (R. 266) Despite this, the ALJ declined to order further evaluation of Angle's back condition. The ALJ's opinion even fails to address the documented objective causes of the back pain.

The undersigned finds that the criteria for ordering a consultative examination under the applicable regulations have been met, and the ALJ erred by not securing a consultative examination from a neurologist to further assess Angle's back impairments. Although the ALJ did arrange for the testimony of a medical expert, this is not an adequate substitute for a consultative examination. A medical expert does not examine the claimant and, therefore, simply cannot provide the missing clinical findings, laboratory testing, or the evaluation of a consultative examiner. Accordingly, the undersigned finds that there was not substantial evidence to support the ALJ's finding that Angle's back condition was not severe and remands this case for further development of the record, including assessment of Angle's back condition by a consultative neurologist.

## IV.

Second, Angle argues that the ALJ erred in finding that his ankle impairment, considered either alone or in combination with his back impairment, did not compel a finding of disability. The ALJ determined Angle's impairments did not meet or equal any of the listed impairments, basing his finding on evidence suggesting that the residuals from Angle's tibia/fibula fracture were fully healed, Angle's lack of credibility, and the fact that he saw no need for Angle to use a

6

cane to ambulate or elevate his leg. (R. 24-25, 29) However, in reaching this finding, the ALJ did not consider the combined effects of plaintiff's ankle and back impairments on his ability to ambulate. He also failed to address evidence in the record from plaintiff's treating physicians establishing that Angle needs a cane to ambulate, as well as the ability to evaluate his leg after sitting, standing or walking. The ALJ also neglected evidence showing Angle could not sit in a work posture, stand, and/or walk for more than a few minutes at a time.

With minimal explanation, the ME opined that Angle did not need a cane, Angle did not need to elevate his leg, and that "some of [Angle's] symptoms may be disproportional to the objective findings." (R. 264-66) The ME based his determination on Angle's treating orthopedist, Dr. Archibald's, December 10, 2003 report, which stated that "the x-ray revealed satisfactory healing," and his March 3, 2004 notation indicating the "fracture is fully healed." (R. 264-66) While this is an accurate reflection of these portions of the record, it fails to reflect Angle's overall physical condition or even the entire content of those specific reports. Furthermore, elsewhere in his testimony, the ME contradicted the testimony cited by the ALJ and stated that a person with Angle's surgically implanted hardware would likely suffer pain and swelling, such pain and swelling would be exacerbated by walking and standing, and to help relieve that pain plaintiff would likely need pain medication, a cane, and the opportunity to elevate his extremities. (R. 267-69, 274-77) The ME also testified that Angle's physician likely believed that he was suffering pain from the hardware because there was documented, persistent swelling and the physician recommended the hardware be removed at a later date. (R. 267-68, 277) On this point, the ME testified as follows:

7

> Q. So we do have something objective here that would account for a level of pain that his doctor would consider actually taking out the hardware?
>
> A. Yes, sir, I think so.

(R. 268)

In the same December 10, 2003 report cited by the ME, Angle's treating orthopedist also stated that Angle needed a cane to ambulate, that his walking ability was limited to short distances, that his standing ability was limited to fifteen to twenty minutes, and that after standing or walking he needed to elevate his foot to control pain and swelling. (R. 155) Further, on examination, Dr. Archibald noted edema in Angle's mid-tibia area and an expected prolonged recovery due to persistent pain and swelling. (R. 156) In January, 2004, Dr. Archibald affirmed his earlier findings, again stating that Angle had persistent pain and swelling and that he was unable to stand for more than thirty minutes at a time. (R. 181) On March 10, 2004, Dr. Archibald noted that although Angle's surgery site and ankle were clinically healed, Angle had significant impression on his ankle from his boot laces and other edematous changes in the area. (R. 180) Dr. Archibald also remarked that Angle continued to suffer from persistent pain and swelling, and the hardware was becoming palpable under the soft tissue of the ankle. (R. 180) During the same exam, Dr. Archibald also suggested that Angle consider having the hardware removed from his left leg to help relieve associated pain and swelling, which may be caused by loosening of the screws. (R. 180)

On April 28, 2004, Dr. Claterbaugh, Angle's primary care physician, noted that Angle still had 2-3+ pitting edema in his left lower leg and advised Angle to keep his left leg elevated while sitting and to wear elastic stockings to help control swelling. (R. 206) Angle was

8

examined again on May 19, 2004; Dr. Claterbaugh's impression was again that Angle suffered from edema of the left lower leg and severe pain in his left lower leg. (R. 207) Dr. Claterbaugh noted during an exam on August 6, 2004 that Angle's left lower leg remained swollen and painful to palpate and that Angle complained of "very severe pain in his left lower leg and swelling when sitting, standing, or walking." (R. 185) In September, 2004, after an examination in which he noted that Angle's ankle remained deformed, Dr. Claterbaugh completed a physical capabilities assessment indicating that Angle could only stand, walk, or sit in a work posture for fifteen minutes at a time and for no more than thirty minutes total during the workday. (R. 183-84) Further, he indicated that Angle needed a cane to ambulate and would need time to lie down and rest and elevate his leg as necessary during the day. (R. 183)

Dr. Claterbaugh continued to treat Angle for chronic, severe pain and swelling in his left ankle. (R. 230-34) Following the MRI results, in February, 2005, Dr. Claterbaugh diagnosed plaintiff with severe lower back pain secondary to disc disease, which further constrained his ability to walk. (R. 230)

Generally, the opinions of a treating physician are entitled to more weight than those of a non-treating physician, and may be "disregarded only if there is persuasive contradictory evidence." Mitchell v. Schweicker, 699 F.2d 185, 187 (4th Cir. 1983); see also 20 C.F.R. § 404.1527(d). Additionally, applicable Social Security regulations require that the ALJ provide his reasons for giving a treating physician's opinion certain weight, or to explain why he discounted a physician's opinion. 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's

9

opinion."). In this case, the ALJ did neither when he determined that plaintiff's ankle impairment did not meet any listing.

The ALJ should have expressly addressed the opinions of Angle's treating physicians that his ankle is deformed; that he suffers from chronic, severe pain and swelling; that he needs a cane to ambulate; that he can only walk or stand for short durations; and that he is unable to initiate, sustain, or complete daily activities. Additionally, the ALJ neglected to note that plaintiff's orthopedist suggested he have the hardware removed from his leg to reduce pain and swelling, and that his primary care physician diagnosed him with disc disease which further limited his ability to ambulate. Likewise, the ALJ should have explained why he did not give any weight to the ME's testimony, which was consistent with Angle's treating physicians' opinions that a person with Angle's hardware would need a cane to ambulate, walking and/or standing would exacerbate pain or swelling, and that after walking or standing he would need to elevate his legs.

The lack of any discussion on these issues makes it impossible for the court to determine whether the ALJ's decision is supported by substantial evidence. See, e.g., Gordon v. Schweicker, 725 F.2d 231, 235 (4th Cir. 1984); Myers v. Califano, 611 F.2d 980, 983 (4th Cir. 1980); Stawls v. Califano, 596 F.2d 1209, 1213 (4th Cir. 1979); Arnold v. Secretary, 567 F.2d 258, 259 (4th Cir. 1977). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the records as a whole to determine whether the conclusions reached are rational.'" Arnold, 567 F.2d at 259 (quoting Oppenheim v. Finch, 495 F.2d 396 (4th Cir. 1974)). The ALJ's failure to

10

indicate whether he considered Angle's treating physicians' opinions and, if so, why he disregarded those opinions and portions of the ME's testimony, compels the conclusion that the ALJ's decision is not supported by substantial evidence. Therefore, the undersigned remands this case to the Commissioner for further consideration of opinions by Angle's treating physicians and the ME as to plaintiff's need for a cane, limitations to his ability to walk, stand, or sit in a work posture, and his need to elevate his legs.

## V.

Third, Angle argues that the ALJ erred in determining that jobs exist in significant numbers in the national economy for a person with his physical limitations. (R. 28-29). At step five in the sequential evaluation process, the ALJ must determine whether the claimant's impairments, when combined with his RFC, age, education, and work experience, prevent the performance of work other than work the claimant previously performed. 20 C.F.R. § 404.1520(a)(4)(v). At this stage of evaluation, the burden shifts to the Commissioner to prove that there are other jobs the claimant can perform given his limitations. See Pass v. Chater, 63 F.3d 1200, 1203 (4th Cir. 2000). To meet this burden, the Commissioner must make a finding supported by substantial evidence that the claimant has the vocational qualifications to perform specific jobs.

Angle contends that in finding that he could do a significant range of light work, the ALJ failed to consider evidence which establishes he needs a cane to ambulate, he can only stand or walk for very short distances, he is limited to thirty minutes on his feet and thirty minutes sitting in a work posture during an eight hour work day, he needs to elevate his legs to reduce pain and swelling, and he would likely miss days of work and have breaks in concentration due to pain.

11

Although the ALJ briefly alluded to the treating physician's opinion that Angle has a very restricted RFC for sedentary work, the ALJ found this opinion conflicted with the treatment record and the reports of the treating orthopedist, and gave it minimal consideration. (R. 26) Specifically, the ALJ stated that Angle's record indicated that his ankle had a good range of motion, that plaintiff could do a bit of outside activity before pain and swelling started, and there was some evidence that Angle could drive an automobile when necessary. (R. 26-27) Further, the ALJ relied on the medical opinions of the non-examining State Agency medical consultants, finding that those opinions "are not inconsistent with other substantial evidence in the record and are thus entitled to controlling weight." (R. 27) Based on these findings, the ALJ determined that Angle retained the RFC to perform light work, requiring lifting up to twenty pounds occasionally and ten pounds frequently, standing or walking for four hours in an eight-hour workday, and sitting without limitation and with only moderate pain. (R. 27)

On October 29, 2003, approximately two months after the original injury, a non-examining State Agency physician determined that by September 3, 2004, Angle would be able to stand, walk, and/or sit for six hours in a typical work day, frequently carry or lift twenty-five pounds, and occasionally lift fifty pounds. (R. 165-72) On reconsideration, in January, 2004, the State Agency physician noted that although Angle still needed a cane to ambulate, within twelve months he should be able to work and lift fifty pounds occasionally. (R. 219)

Yet, as noted above, plaintiff's treating physicians determined that plaintiff suffers from chronic severe pain and swelling in his ankle and back, he needs a cane to ambulate, his walking and standing abilities are radically limited, and that after standing Angle would need time to lie down and elevate his leg. (R. 155-56, 181, 183, 185, 206-07) Similarly, although the ME

12

testified at one point that he did not think Angle needed a cane or to elevate his leg, and that "some of [Angle's] symptoms may be disproportional to the objective findings," (R. 264-66), he acknowledged later in his testimony that the continued existence of the plate and screws could cause pain and swelling, such pain and swelling was not uncommon in the tibia and fibula area where plaintiff sustained his fracture, such pain and swelling would be exacerbated by walking and standing, and to help relieve that pain plaintiff would likely need pain medication, a cane, and the opportunity to elevate his extremities. (R. 267-69, 274-77)

Moreover, at the time of the State Agency physician's assessment in October, 2003, Angle remained completely non-weight bearing on his injured ankle. (R. 157-63) On November 5, 2003, Angle's orthopedist, Dr. Archibald, advised plaintiff to begin bearing weight on his injured ankle as tolerated, and by November 19, 2003, Dr. Archibald noted that plaintiff was just beginning to bear weight on the injured ankle due to the pain. (R. 157-58) In December, 2003, the record establishes that Angle's walking ability was limited to fifteen to twenty minutes, and that after being on his feet he needed to sit and elevate his foot to control pain and swelling. (R. 155-56) Again, in January 2004, Dr. Archibald found plaintiff could be on his feet for no more than thirty minutes. (R. 181)

Thereafter, Angle continued to receive monthly treatment from his primary care physician, Dr. Claterbaugh, for severe pain and swelling related to his ankle injury. Dr. Claterbaugh continued Angle's prescribed pain medication and advised him to keep his leg elevated when sitting. (R. 184-85, 206-07) In September, 2004, Dr. Claterbaugh assessed Angle's physical capabilities and determined that he needed a cane to ambulate, and he was limited to lifting five pounds frequently and ten pounds occasionally, standing and/or walking

13

for fifteen minutes without interruption and thirty minutes total in a work day, and sitting in a work posture for fifteen minutes without interruption and thirty minutes total in a work day. (R. 183) Dr. Claterbaugh also stated Angle needs to elevate his lower extremities and lie down and rest as necessary, and that he has limited concentration and focus due to the degree of pain. (R. 183)

As noted above, the opinions of a treating physician are entitled to more weight than those of a non-treating physician and may be "disregarded only if there is persuasive contradictory evidence." Mitchell, 699 F.2d at 187. The ALJ must detail why he gave a treating physician's opinion certain weight or discounted that opinion. 20 C.F.R. § 404.1527(d)(2). The opinions of Angle's treating physicians and the State Agency medical consultants markedly differ. Yet, the ALJ does not account for, much less explain, the divergence in these opinions. Nor does the ALJ provide sufficient explanation as to why he completely disregarded the opinion of the treating physician who had seen Angle numerous times in favor of snippets of the record which paint an incomplete picture of Angle's physical limitations and a physical capabilities assessment made nearly a year earlier. Finally, the ALJ did not address the ME's testimony that a person with Angle's hardware would likely suffer severe pain and swelling, need a cane to ambulate, and need to elevate his leg as necessary. This testimony is consistent with Angle's treating physicians' opinions. Accordingly, given Angle's need for a cane to walk, the court cannot find there is sufficient evidence to support the ALJ's determination that plaintiff can walk or stand for four hours per day and lift ten pounds frequently and twenty pounds occasionally. The undersigned remands this case for appropriate consideration of this evidence by the Commissioner.

Furthermore, as the ALJ's assessment of an individual's RFC bears directly on a finding that the individual can perform other work, an unsupported RFC determination calls into question a finding that there are significant numbers of jobs that a person with the claimant's limited capabilities can perform. Here, the ALJ specifically found that because there was no evidence in the record to justify a hypothetical limitation concerning Angle's sitting, walking, and standing limitations of thirty minutes total during the workday, his need to elevate his leg as necessary, and the possibility that he might miss three or four days of work per month due to pain, the ALJ disregarded the vocational expert's testimony that no jobs were available to someone with these limitations. The ALJ failed to address evidence of these limitations from Angle's treating physician, the ME, and the record. Therefore, the potential absence of available jobs is another aspect of relevant evidence which was not considered in the ALJ's opinion and should be specifically addressed by the ALJ on remand. See Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989) ("In order for a vocational expert's opinion to be relevant or helpful...it must be in response to proper hypothetical questions which fairly set out all of [the individual's] impairments.").

## VI.

The ALJ's failure to develop the record related to Angle's back condition and to fully address Dr. Archibald, Dr. Claterbaugh, and the ME's opinions and other evidence in the record suggesting that plaintiff needs a cane to ambulate and that his ability to ambulate and sit in a work posture is significantly limited, compels the finding that the ALJ's decision is not supported by substantial evidence. Accordingly, defendant's motion for summary judgment is denied and this case is remanded under sentence four of 42 U.S.C. § 405(g) to the Commissioner

15

for further development of the record as outlined in this opinion. 42 U.S.C. § 405(g) ("The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for rehearing.").

The Clerk of the Court is hereby directed to send a certified copy of the Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 15th day of August, 2006.

Michael F. Urbanski
United States Magistrate Judge